**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

HOWARD STEPHEN MASK, )
)
     Plaintiff, )
)
vs. )     CIV. A. NO. 17-0421-KD-MU
)
STRATEGIC RESTAURANTS )
ACQUISITION CO., LLC, )
)
     Defendant. )


## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Leave to Amend Complaint (Doc. 7), Plaintiff's Motion to Remand (Doc. 8), Defendant's Consolidated Response in Opposition to Plaintiff's Motion for Leave to Amend Complaint and Motion to Remand (Doc. 11), and Plaintiff's Reply to Defendant's Consolidated Response in Opposition to Plaintiff's Motion for Leave to Amend Complaint (Doc. 15). These motions have been referred to the undersigned Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen LR 72(a)(2)(S). Upon consideration of all relevant filings in this case, the undersigned recommends that Plaintiff's motion for leave to amend his complaint be **GRANTED** for the reasons set forth below. The undersigned further recommends that Plaintiff's motion to remand be **GRANTED** and that this action be **REMANDED** to the Circuit Court of Mobile County, Alabama.

## **BACKGROUND**

On June 20, 2017, Plaintiff filed his original complaint in the Circuit Court

of Mobile County, Alabama alleging claims for negligence, wantonness, breach

of implied warranty, and violation of the Alabama Extended Manufacturers

Liability Doctrine arising from his allegations that he suffered from food poisoning

as a result of being served and ingesting Salmonella contaminated food at

Burger King Store No. 4016. Plaintiff brought his original claim against Burger

King of Alabama, Inc. and the following fictitious defendants:

> Fictitious Defendants 1-20, being the persons, firms, corporations or other
> legal entities who negligently and/or wantonly packaged, prepared, and/or served
> contaminated food to Plaintiff, all of whose names are unknown to Plaintiff at this
> time but will be substituted by amendment when ascertained[.]

(Doc. 1-1, caption). On August 3, 2017, Plaintiff filed his First Amended

Complaint to correctly identify the owner/operator/manager of the subject Burger

King as GPS Hospitality, IV, LLC a/k/a GPS Hospitality, LLC, d/b/a Burger King #

4016 (Doc. 1-1 at p. 30), and on August 11, 2017, Plaintiff filed his Second

Amended Complaint to further correct the name of the owner/operator/manager

of the subject Burger King as Strategic Restaurants Acquisition Co., LLC, d/b/a

Burger King #4016 (Doc. 1-1 at p. 44). In both of these amended complaints,

Plaintiff continued to assert claims against the fictitious defendants described

above.

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Strategic

Restaurants Acquisition Co., LLC, ("SRAC") filed a Notice of Removal of this

action to this Court on September 15, 2017, in which it alleged complete diversity

between Plaintiff and SRAC and an amount in controversy in excess of $75,000.

(Doc. 1). On October 13, 2017, Plaintiff filed a motion for leave to amend his complaint to substitute Dessie Grimes, who was the Burger King manager or one of the individuals involved in preparation of Plaintiff's food, in place of one of the fictitious defendants described in the original complaint. (Doc. 7 at p. 3). Because Grimes is a resident of Alabama, as is Plaintiff, he also filed a motion to remand this action to state court on the same date. (Doc. 8). In addition to arguing that the addition of Grimes as a defendant destroys diversity, Plaintiff also argues, in support of his motion to remand, that SRAC has failed to meet its burden of demonstrating that the amount in controversy exceeds $75,000. (Doc. 8 at pp. 5-7).

## CONCLUSIONS OF LAW

### A.  Motion to Amend

Plaintiff seeks leave of court to file an amended complaint substituting a specific individual, Dessie Grimes, in place of one of the fictitious defendants named in the original complaint, pursuant to Rule 15 of the Federal Rules of Civil Procedure or, in the alternative, pursuant to 28 U.S.C. § 1447(e). (Doc. 7 at pp. 3-7). Because Grimes is a resident of Alabama, the amendment would destroy diversity jurisdiction. As SRAC rightly asserts, the liberal amendment rules contained in Rule 15 do not apply in this situation. Instead, the discretionary provisions of 28 U.S.C. § 1447(e) apply when a plaintiff seeks to amend his

complaint to join a defendant that would destroy complete diversity.[1] *See Starnes Davis Florie, LLP v. GOS Operator, LLC,* Civ. A. No. 12-0387-WS-N, 2012 WL 3870413, at *2 (S.D. Ala. Sept. 5, 2012) (citing *Ingram v. CSX Transp., Inc.,* 146 F.3d 858, 862 (11th Cir.1998) (holding that where the plaintiff sought to amend complaint post-removal to join a defendant that would destroy complete diversity, "in determining whether to grant [plaintiff]'s motion, the district court should have considered 28 U.S.C.A. § 1447(e)")). Section 1447(e) states as follows: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). "Decisions applying § 1447(e) have made clear that the statutory language means just what it says." *Portis v. Wal-Mart Stores, Inc.,* Civ. A. No. 07-0557-WS-C, 2007 WL 3086011, at *2 (S.D. Ala. Oct. 19, 2007). When § 1447(e) is applicable, the court is "left with only two options: (1) deny joinder; or (2) permit joinder and remand [plaintiff]'s case to state court." *Ingram,* 146 F.3d at 862 (noting that a district court has no discretion to add a non-diverse defendant, then "retain jurisdiction and decide the case on the merits"). "The determination of which of these options

---

[1] Plaintiff argues that it is not seeking to "join" or "add" a defendant, but is simply seeking to substitute Grimes in place of one of the fictitious defendants, and therefore, Rule 15 of the Federal Rules of Civil Procedure applies, not § 1447(e). *See Taylor v. Alabama CVS Pharmacy, LLC,* Civ. A. No. 7:16-CV-1827-TMP, 2017 WL 3009695, at *5 (N.D. Ala. July 14, 2017) (citing 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 3723 at 779 (West 2009)). Rather than delving in to the murky waters of whether and to what extent fictitious party practice is allowed in removed case in federal court, the Court will analyze Plaintiff's motion under the more stringent § 1447(e) standard.

is more appropriate in a particular case 'is left to the discretion of the district court.'" *Starnes Davis Florie,* 2012 WL 3870413, at *3 (quoting *Fontainebleau Gardens Condominium Ass'n, Inc. v. Pacific Ins. Co.,* 768 F. Supp. 2d 1271 (S.D. Fla. 2011)).

Although allowing joinder that would destroy diversity is within the discretion of the district court, case law within the Eleventh Circuit, as well as other circuits, instructs courts to consider four factors in evaluating whether to permit joinder pursuant to § 1447(e): "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for the amendment, (3) whether the plaintiff will be significantly injured if the amendment is not allowed, and (4) any other factors bearing on the equities." *Starnes Davis Florie,* 2012 WL 3870413, at *3 (quoting *Scipione v. Advance Stores Co., Inc.,* No. 8:12-cv-687-T-24-AEP, 2012 WL 3105199, at *2 (M.D. Fla. July 31, 2012) (citations and internal quotation marks omitted)); *see also Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir. 1987); *Holiday Isle, LLC v. Clarion Mortg. Capital, Inc.,* Civ. A. No. 07-00798-CG-C, 2008 WL 1756369, at *2 (S.D. Ala. Apr. 11, 2008). "This framework is designed to facilitate the balancing of the defendant's interest in maintaining a federal forum with the competing interest disfavoring parallel lawsuits in federal and state courts." *Holiday Isle,* 2008 WL 1756369, at *2.

The first factor to consider is the extent to which the purpose of Plaintiff's amendment is to defeat federal jurisdiction. SRAC argues that the fact that Plaintiff had documents that included "multiple references" to Grimes's name

prior to removal proves that Plaintiff's purpose in amending his complaint after the case was removed is to defeat diversity jurisdiction. The documents to which SRAC refers are several Mobile County Health Department inspection reports documenting inspections of the subject Burger King restaurant that were received by a person whose name appears to be "Dessie Grimes." (Doc. 11-2). The name is written in cursive and is difficult to decipher. There is no indication on these reports as to the position Grimes held at this Burger King restaurant or whether she was present there on the date of the subject incident. What is clear in this case is that, at the time the original complaint was filed, Plaintiff intended to substitute individual defendants who "negligently and/or wantonly packaged, prepared, and/or served contaminated food to Plaintiff" at the time those individuals were identified. (Doc. 1-1, caption).

Even though SRAC cites cases which hold that a plaintiff's attempt to add a non-diverse defendant after the case was removed when he knew the identity of that defendant at an earlier time suggests that the purpose of the plaintiff's amendment was to defeat federal jurisdiction, the Court is unconvinced that the timing of the amendment here necessarily implies that it was offered solely to destroy diversity jurisdiction. SRAC's argument is, in fact, perplexing. If, as SRAC contends, Plaintiff knew Grimes's identity and her possible role in the subject incident at the time he filed the complaint, the safest way for him to prevent removal was simply to name her in the original complaint, not wait until after removal and hope for remand. Rather, in the circumstances of this case, the fact that Grimes was added in a post-removal amendment suggests that even if

Plaintiff knew her name, he did not know the extent of her involvement at the time the complaint was filed. The Court finds that this factor weighs in favor of Plaintiff.

The second factor to evaluate is whether Plaintiff has been dilatory in filing for leave to amend to add Grimes. In this case, the notice of removal was filed on September 15, 2017, and Plaintiff filed his motion for leave to amend his complaint to add Grimes less than one month later, on October 13, 2017, which was less than four months after the original complaint was filed. SRAC's answer was not filed until September 20, 2017, and no scheduling order has yet been entered. Under these circumstances, the Court finds that Plaintiff has not been dilatory in seeking to amend his complaint.

The third factor to consider is whether Plaintiff will be significantly injured if the amendment is not allowed. While it is true that a defendant's right to seek a federal forum by removal bears some weight, so too does the plaintiff's interest in avoiding duplicate litigation in two separate courts. If Plaintiff is not allowed to amend his complaint to add Grimes and this action is not otherwise remanded, he would have to continue to litigate his claim against SRAC in this Court and would have to bring his claim against Grimes (and other individual defendants once they are identified) in the Circuit Court of Mobile County. Under this scenario, the same factual and legal questions would be contested in two separate courts, wasting precious judicial resources and increasing the cost of the litigation for all parties. Plaintiff would be injured if the amendment is not allowed because he would have to file a new suit and bear the separate costs of

litigation to pursue his claim against Grimes. *See Adams v. International Paper Co.,* Civ. A. 17-0105-WS-B, 2017 WL 1828908, at * 5 (S.D. Ala. May 5, 2017); *Thomas v. Eight Mile Nursing & Rehab Center LLC,* Civ. A. No. 15-00051-KD-N, 2015 WL 1778359, at *4 (S.D. Ala. April 20, 2015). "While [P]laintiff may be able to file against [the non-diverse defendants] in a separate lawsuit, the inefficiency of proceeding in parallel forums and the desirability of providing complete relief in one lawsuit" support a finding "that the third factor weighs in favor of allowing the amendment." *Holiday Isle,* 2008 WL 1756369, at *3.

Consideration of the fourth factor, whether there are other equities bearing on whether this Court should allow the amendment, also weighs in favor of allowing the amendment. This case was only recently removed to this Court. No scheduling order has been entered, and the date for amending pleadings and joining parties has not yet even been set. Little effort will have been wasted in this case if it is returned to state court, whereas failing to remand it could result in double litigation. *See Taylor,* 2017 WL 3009695, at *8-9. Moreover, "[t]he presence of [Grimes] as a defendant reduces the concern for local prejudice ("home cooking") against [SRAC], which is the underlying rationale for diversity subject-matter jurisdiction. As Grimes appears to be an Alabama resident, there is no reason to believe that she, or [SRAC] by extension, will be unfairly treated by an Alabama jury." *Taylor*, 2017 WL 3009695, *9 n. 7. Finally, judicial economy weighs in favor of remand.

SRAC contends that allowing the amendment would impair its right to choose a federal forum when complete diversity exists. In the context of this

case, however, that equitable consideration is not compelling. After all, this action would not have been removable in the first place had Plaintiff known at the outset the identities of the individual defendant(s). Under these circumstances, SRAC's choice of a federal forum is a mere fortuity that is not entitled to dispositive weight. The expense, inconvenience, and inefficiency of forcing Plaintiff to maintain separate, parallel suits in two different courts, as well as the doubling of the expenditure of judicial resources favor allowing joinder. Thus, the Court concludes that the equities in this case favor allowing Plaintiff to join the non-diverse defendant under § 1447(e). *See Adams,* 2017 WL 1828908, at *4-5.

**B.  Motion to Remand**

Plaintiff has also filed a motion to remand this case to the Circuit Court of Mobile County, Alabama. (Doc. 8). Plaintiff's argument in support of this motion is two-fold: 1) the addition of Grimes as a defendant destroys diversity jurisdiction, and 2) SRAC has failed to meet its burden of demonstrating that the amount in controversy exceeds $75,000. Because the Court has found that Plaintiff should be granted leave to amend his complaint to add Grimes as a defendant, complete diversity no longer exists and this case is due to be remanded. However, even if the Court did not allow the amendment, remand would be appropriate because, as explained below, SRAC had not demonstrated that the amount in controversy exceeds $75,000.

Because SRAC removed this case to federal court, it has the burden of proving that federal jurisdiction exists.  *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001); *Davidson v. Liberty Mut. Ins. Co.*, CA 16-0516-KD-C,

2016 WL 7428220, at *5 (S.D. Ala. Dec. 8, 2016). Federal courts, being of limited jurisdiction, must "proceed with caution in construing constitutional and statutory provisions dealing with [their] jurisdiction." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971), *quoted in Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly," and "***all doubts about jurisdiction should be resolved in favor of remand to state court***." *Univ. of S. Ala.*, 168 F.3d at 411 (emphasis added); *see also Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994) (holding that any questions or doubts are to be resolved in favor of returning the case to state court). SRAC claims in this case that federal jurisdiction is proper on the basis of diversity of citizenship. (Doc. 1). Therefore, SRAC bears the burden of establishing that Plaintiff is diverse from all defendants and proving by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement. *See Williams*, 269 F.3d at 1319; *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

Plaintiff's complaint does not seek a specific amount of damages. (Doc. 1-1 at pp. 46-48). In such a case, when the complaint does not set forth a specific amount of damages, removal is proper if the requisite amount in controversy is "facially apparent from the complaint." *Williams,* 269 F.3d at 1319. If the amount in controversy is not facially apparent, the court may look to the notice of removal and to evidence submitted that is relevant to the amount in controversy at the

time the case was removed. *Id*. (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). In this case, no indication as to the amount in controversy is contained in the complaint; the complaint lists only general categories of damages without any monetary amounts. Because the amount in controversy is not facially apparent from the amended complaint, the Court must look to the notice of removal and other evidence submitted to determine if the amount in controversy is met.

In his complaint, Plaintiff seeks recovery of "compensatory and punitive damages, in an amount to be determined by the trier of fact, including interest, costs, and attorney's fees…" as a result of suffering food poisoning after consuming cheeseburgers at Burger King. (Doc. 1-1). Because the amount of damages sought is not determinable from the complaint, to meet its burden of proof, SRAC relies on correspondence from Plaintiff's attorney relaying a settlement offer to SRAC prior to the commencement of this action. (Doc. 1-2). In that letter, Plaintiff's attorney stated that Plaintiff incurred special damages of $10,898.04 in medical expenses[2] and $2847.24 in lost wages, endured physical pain and suffering, and endured emotional and mental anguish. Plaintiff made a demand of $125,000 to settle the claim. Plaintiff now argues that the amount he demanded in the pre-suit letter was "puffing and posturing" and cannot be relied upon to support federal jurisdiction. (Doc. 8 at p. 6).

---

[2] In his motion to remand, Plaintiff explains that the $10,898.04 amount he listed for medical expenses in his demand letter was the "retail" charge, but that in actuality, his medical insurance company paid just $5016.00. He notes that, under Alabama law, the subrogation amount is the most he will be able to recover as medical expenses. (Doc. 8 at p. 6).

While the correspondence relied upon by SRAC can constitute an "other paper" to support jurisdiction within the meaning of 28 U.S.C. § 1446(b), *see Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1213 n.62 (11th Cir. 2007), the question remains whether this paper in this case establishes the amount in controversy by a preponderance of the evidence. The Court recognizes that settlement offers can be used as an element to prove the amount in controversy.

> "While [a] settlement offer, by itself, may not be determinative, it counts for something." *Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1097 (11th Cir. 1994). What it counts for, however, depends on the circumstances. Settlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence. On the other hand, settlement offers that provide "specific information … to support [the plaintiff's] claim for damages" suggest the plaintiff is "offering a reasonable assessment of the value of [his] claim" and are entitled to more weight. *Golden Apple Management Co. v. Geac Computers, Inc.*, 990 F. Supp. 1364, 1368 (M.D. Ala. 1998).

*Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009). A settlement offer or assessment of the case that contains no specific information to support the amount of damages demanded amounts to nothing more than a conclusory or speculative allegation. "A conclusory allegation . . . that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden." *Williams*, 269 F.3d at 1319-20; *Burns*, 31 F.3d at 1097.

In the instant case, SRAC relies upon Plaintiff's summary demand to settle the case prior to suit being filed. The only substantiation for demanding more than ten times the amount of special damages incurred was Plaintiffs' attorney's assessment that SRAC's conduct was knowing and egregious because of recent

health department inspections which he alleged noted deficiencies in maintaining food temperature. (Doc. 1-2). There were no allegations that Plaintiff suffered lingering affects from the food poisoning or that his condition and alleged suffering lasted more than three to four days. Courts are allowed to make an assessment of a plaintiff's claim based on their judicial experience and common sense, *see Rachel v. PNC Bank, N.A.,* Civ. A. 16-00351-KD-MU, 2017 WL 1362034, at *2-3 (S.D. Ala. Apr. 10, 2017); however, courts cannot speculate on the amount in controversy, *see Lowery*, 483 F.3d at 1209, 1215. In this case, SRAC's contention that Plaintiff's blanket demand of $125,000 based on special damages totaling less than $10,000 establishes an amount in controversy of more than $75,000 has little to support it. In this case, in which Defendant relies upon Plaintiff's demand of more than ten times the amount of special damages to support its amount in controversy argument, it would be speculation on the Court's part to find that the amount in controversy exceeds the jurisdictional limit of $75,000.

## CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that Plaintiffs' motion for leave to amend his complaint (Doc. 7) be **GRANTED,** that Plaintiff's motion to remand (Doc. 8) be **GRANTED,** and that this case be **REMANDED** to the Circuit Court of Mobile County, Alabama.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or

anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **21st** day of **November, 2017**.

s/P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE